FILED
ASHEVILLE, N.C.

OCT 08 2017

U.S. DISTRICT COURT
W. DIST. OF N.C.

# UNITED STATES DISTRICT COURT
for the
Western District of North Carolina

United States of America )
v. )
) Case No. 1:17-mj- 125
)
)
)
MICHAEL CHRISTOPHER ESTES )
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 6, 2017__ in the county of __Buncombe__ in the __Western__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 844(i) | Attempted Malicious Use of Explosive Materials |
| 18 U.S.C. 844(g) | Unlawful Possession of Explosive Materials in an Airport |

This criminal complaint is based on these facts:
See Affidavit of Special Agent James A. Anderson of the Federal Bureau of Investigation in Attachment A hereto.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent James A. Anderson, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: enter date

_____
David S. Cayer
United States Magistrate Judge

City and state: Charlotte, North Carolina   Honorable David S. Cayer, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A:

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, James A. Anderson, being duly sworn, do hereby state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since July 20, 1997. I am currently assigned to the Asheville Resident Agency of the Charlotte field office.

2. As a Special Agent, I am a law enforcement officer of the United States as defined by Section 2510(7) of Title 18, United States Code ("U.S.C."), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses enumerated in Section 2516 of Title 18, U.S.C. As a Special Agent, I have conducted and participated in a variety of criminal and national security investigations, including investigations associated with counterterrorism, foreign counterintelligence, murder, gang violence, bank robberies, fugitives, financial crimes, computer crimes, as well as other violent criminal acts.

3. This Affidavit is being submitted in support of a criminal complaint and an arrest warrant for **MICHAEL CHRISTOPHER ESTES**, hereafter referred to as **ESTES**, for violations of Title 18, U.S.C., Section 844(i), "Attempted Malicious Use of Explosive Materials," and Title 18, U.S.C., Section 844(g), "Unlawful Possession of Explosive Materials in an Airport."

4. I am aware of information contained in this Affidavit through direct participation in this investigation and information provided to me by other law enforcement officers and witnesses. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint and an arrest warrant, I have not included each and every fact known to me concerning

this investigation. I have set forth only the facts I believe are necessary to support the issuance of a criminal complaint and an arrest warrant for **ESTES**.

## FACTS SUPPORTING PROBABLE CAUSE

5. On October 6, 2017, at approximately 7:00 AM, FBI agents in Asheville, North Carolina ("NC") were contacted by investigators with the Federal Air Marshal Service in Charlotte, NC, who advised that police officers at the Asheville Regional Airport, 61 Terminal Drive, Fletcher, NC, 28732, (the "Asheville Airport") had just found what appeared to be an improvised explosive device (the "device" or the "device at Asheville Airport"). FBI agents coordinated with investigators from the Asheville Police Department ("APD") and agents from the NC State Bureau of Investigation ("SBI") and responded to the airport. APD bomb technicians examined the device. The bomb technicians rendered the device safe. They were joined by SBI bomb technicians and the Transportation Security Administration ("TSA"). A TSA officer tested the substance in the device using an Explosive Trace Detector or ETD and it was positive for Ammonium Nitrate - a widely used and regulated bulk industrial explosive. Thereafter, a "bomb dog," i.e., a dog specially trained to detect explosive materials, approached the device and "signaled," indicating the presence of an explosive material.

6. Investigators described the device as an Ammonium Nitrate/fuel oil or "AN/FO" type explosive device. Ammonium Nitrate acts as an oxidizing agent and absorbent for the fuel source. AN/FO type explosive devices have been used in a number of terrorist related incidents around the world in the past. When AN/FO comes into contact with a flame or other ignition source it explodes violently. Shrapnel or nails or ball bearings are often times added to the device so as to increase the devastation inflicted by the explosion. The device at the Asheville Airport

consisted of a glass Mason type jar with a lid that was locked-down by an incorporated locking device. There were prills – pellets or solid globules of a substance formed by the congealing of a liquid during processing - inside the jar and two plastic cups containing an unknown liquid substance – believed to be the fuel source. There were pieces of cold compress packs inside the jar. Ammonium Nitrate can be removed from cold compress packs and will congeal or form into prills during processing. Once the Ammonium Nitrate forms into prills, it can absorb the fuel oil necessary to the explosive process. The jar was filled with steel wool that was then wrapped around nails and one shotgun cartridge. The shotgun cartridge was red in color and marked "AA HS 2 ½ - ½ - 9" and the rim of the cartridge was marked "WIN SH" and what appeared to be "410" – believed to be a reference to a Winchester .410 guage #9 shot which contains approximately ½ ounce of pellets. There was an alarm clock taped to the outside of the jar. There was then a grouping of matches taped to the striker arm positioned between the bells. The alarm clock bells were removed from the clock. One of the alarm clock bells was taped between the glass of the jar and the matches – appearing to create a hard surface against which the matches could strike. The clock was set to go off at 6:00.

7. Investigators reviewed video footage from the airport security cameras that depicted an individual walking onto the airport grounds at 12:39 AM, on October 6, 2017. The individual appeared to be a white male and was wearing black pants, a black jacket, and a black cap and he appeared to be carrying a bag. Based on a review of the video, the individual walked near the entrance to the terminal, went out of sight momentarily, and was then seen departing the area without the bag.

8. Investigation determined that an airport maintenance employee (whose identity is known to investigators), advised that he/she recently (October 4th or 5th, 2017) saw a man come out of a wooded area located across the street to the east of the airport. The man was wearing a black shirt, black shorts, and a black cap. FBI, SBI and APD investigators responded to the area which the employee identified and conducted a walking grid-search in an effort to discover any potential evidence. In that wooded area, approximately 500 yards to the east of the airport parking lot, investigators observed a green backpack leaning up against a tree, partially covered in leaves, as if someone had intentionally tried to conceal it from plain view. The brand name of the backpack was "Traverse 70," and it appeared new and unused. Underneath the backpack was a separate black tool bag.

9. The bomb technicians rendered the backpack and tool bag safe by x-raying it, unpacking it, and conducting a safety exam of the contents. Among other items found in the tool bag, investigators observed a roll of Gorilla Tape – which was consistent with some of the tape used on the device at the Asheville Airport, Kobalt gloves, Sterno Firestar Gel – believed to be the likely fuel source for the AN/FO type device encountered at the Asheville Airport, and what appeared to be an alarm clock bell – consistent with the bell missing from the clock found on the device at the Asheville Airport. The Material Safety Data Sheet for Ammonium Nitrate, because of the danger associated with the substance and irritation and pain it can cause to the skin, recommends that those handling the substance wear protective gloves. There was also a bag containing shotgun shells, red in color and marked "AA HS 2 ½ - ½ - 9" and the rims on the cartridges were marked "WIN SH" and "410" – matching the shotgun shell observed in the device at the Asheville Airport. Furthermore, investigators found a grey colored polymer spoon in the backpack.

10. Investigators canvassed the Walmart store located at 60 Airport Road, in Arden, NC, 28704, where they learned that on October 3, 2017, an individual had purchased a roll of Gorilla Tape, Sterno Firestarter Gel, a glass Mason type jar, matches, cold compress packs, and an alarm clock. The Gorilla Tape and Sterno Firestarter Gel purchased by the individual appear to be very similar to the tape and gel observed in the tool bag found in the wooded area. The alarm clock purchased by the individual contained two bells, appearing to match the bell found in the tool bag and the clock found on the device at the Asheville Airport. The Mason type jar purchased is also similar to the Mason type jar used for the device at the Asheville Airport. Surveillance video footage indicates the individual is a white male, wearing a black jacket, dark colored pants, a black baseball cap with an Under Armour logo, carrying a black backpack. The individual appeared similar to the individual captured on security video at the airport at 12:39 AM on October 6, 2017.

11. Investigators canvassed the Lowe's store located at 19 McKenna Road, in Arden, NC, 28704, where they learned that on October 3, 2017, an individual had purchased a pair of Kobalt gloves which appeared very similar to those observed in the tool bag found in the wooded area. Additionally, on October 4, 2017, an individual purchased a black tool bag which appeared to identically match the tool bag found under the backpack in the wooded area. The individual paid cash on both days. Surveillance video footage led investigators to believe that the individual observed making the purchases at Lowe's and Walmart are the same person.

12. Investigators contacted employees at the REI store located at 31 Schenk Parkway, in Asheville, NC, 28803, who advised that an individual purchased a Traverse 70 backpack and a grey-colored polymer spoon on October 1, 2017. Although there was no video surveillance of the

purchase, the individual paid cash and used an REI membership number when paying. The membership number was registered to "Michael C. Estes." Investigation further identified "Estes as **MICHAEL CHRISTOPHER ESTES**. Based on investigators' review of various photographs of **ESTES** from the Department of Motor Vehicles and recent arrest photographs in Buncombe County investigators believed that **ESTES** was the individual captured on video footage during the Lowe's and Walmart purchases referenced above.

13. At the time of **ESTES'** attempt to damage the Asheville Regional Airport, located at 61 Terminal Drive, in Fletcher, NC, the airport was used in interstate commerce or was used in an activity affecting interstate commerce. The Asheville Regional Airport is subject to the regulatory authority of the Federal Aviation Administration. **ESTES** possessed the explosive device without the consent of the Greater Asheville Regional Airport Authority - the agency, department or other person responsible for the management of the airport.

14. Investigators released a still photograph of **ESTES** taken from one of the surveillance videos. A number of sightings were reported in the area of Airport Road in Asheville on October 7, 2017. Officers from the APD responded and spotted **ESTES** in the area of the Walmart on Airport Road. He was dressed differently, but carrying a small black bag. **ESTES** agreed to accompany the officers back to APD Headquarters in downtown Asheville.

15. Investigators responded to APD Headquarters. They advised **ESTES** of his *Miranda* rights. **ESTES** waived his rights and agreed to answer questions. **ESTES**, among other things, admitted that he placed the explosive device at the Asheville Airport. He also explained that he bought the precursor materials at Walmart and Lowe's. **ESTES** described how he created the device using Ammonium Nitrate and the Sterno as a fuel source and then rigged the alarm

clock to strike the matches and cause the flame necessary to trigger the device. **ESTES** admitted to putting the nails in the device as well. More specifically, the alarm clock would go off, the matches would strike, the Sterno would heat up, and then the Ammonium Nitrate would explode. **ESTES** claimed that he was getting ready to "fight a war on U.S. soil", but also claimed that he did not actually set the alarm clock. Finally, **ESTES** admitted that he purchased the backpack found in the woods at REI in Asheville. **ESTES** explained that he "staged" in the woods a couple of days before placing the device at the Asheville Airport.

## CONCLUSION

16. Based on my previous investigative experience and the above information, I submit there is probable cause that on or about October 6, 2017, **MICHAEL CHRISTOPHER ESTES** was in violation of Title 18, U.S.C., Section 844(i), "attempted malicious use of explosive materials," and Title 18, U.S.C., Section 844(g), "unlawful possession of explosive materials in an airport."

---

JAMES A. ANDERSON
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

*AUSA Thomas Kent reviewed this Affidavit.*

Sworn to and subscribed before me this 8th day of October 2017.

---

THE HONORABLE DAVID S. CAYER
UNITED STATES MAGISTRATE JUDGE

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 8th Day of October, 2017, at enter time am/pm

Signed: October 8, 2017

David S. Cayer
United States Magistrate Judge